UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MAHAD ABDI AHMED,

Petitioner,

v.

JEREMY CASEY, Warden, Imperial
Regional Detention Center,

Respondent.

Case No.:  26-cv-981-RSH-DDL

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

On February 13, 2026, Petitioner Mahad Abdi Ahmed filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Petitioner, a citizen of Somalia, is detained by U.S. Customs and Immigration Enforcement ("ICE") at the Imperial Regional Detention Facility in Calexico, California. Respondents have filed a return. ECF No. 7. As set forth below, the Court grants the Petition.

**I.      BACKGROUND**

On December 20, 2024, Petitioner was apprehended by U.S. Border Patrol near the U.S.-Mexico border. ECF No. 7 at 2. Petitioner was taken into immigration custody. After receiving a positive credible fear determination he was placed in removal proceedings. *Id.*

On May 30, 2025, an immigration judge ordered Petitioner removed to Somalia. ECF No. 7-1, Ex. 4. Although not clear from the record before the Court, it appears that

1

Petitioner intended to file an asylum application, and at the May 30, 2025 hearing requested additional time to do so and was denied this request. *Id.* Ex. 3. It also appears that Petitioner filed one or more motions to reopen his removal proceedings after having been ordered removed. *Id.* Petitioner thereafter filed an appeal with the Board of Immigration Appeals ("BIA") on June 26, 2025. ECF No. 7 at 2. Petitioner filed his appellate brief on November 25, 2026, and his appeal remains pending. *Id.*

## II.    LEGAL STANDARD

Title 28 of the U.S. Code, Section 2241, provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A detainee bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

## III.    ANALYSIS

Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that where an asylum officer has made a determination of credible fear, "the alien shall be detained for further consideration of the application for asylum." The issue presented here is whether, in the circumstances of this case and at this point in time, applying this mandatory detention regime violates Petitioner's due process rights.

### A.    Whether Petitioner Has a Due Process Claim

Respondents argue that under the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioner has no due process rights beyond those that Congress has provided, and that his due process claim therefore fails. ECF No. 7 at 7–8. In *Thuraissigiam*, the Supreme Court rejected a habeas petitioner's argument that the due process clause conferred rights to challenge his expedited removal beyond those established by Congress, stating that "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107. The petitioner in that case had "attempted to enter the country illegally and was apprehended just 25 yards from the border." *Id.* The Supreme Court determined that the "political

department of the government" had plenary authority to admit or exclude aliens seeking initial entry, and thus "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 139–40.

Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 536 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and . . . he accordingly is not entitled to procedural protections beyond those provided by statute.").

Most courts have ruled otherwise. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b) … 'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, "will—at some point—violate the right to due process."'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). This Court agrees with the majority position that a person detained under Section 1225(b) may assert a due process challenge to prolonged mandatory detention without a bond hearing.

This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens

3

being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."); *Hernandez v. Wofford*, No. 25-cv-986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025) ("Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority'—through detention or otherwise.") (citations omitted); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The holding in *Thuraissigiam* does not foreclose Plaintiffs' due process claims which seek to vindicate a right to a bond hearing with certain procedural protections.").

Respondents also argue that a much older case, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 207–09 (1953), establishes that arriving aliens subject to a mandatory detention scheme, regardless of the length of their detention, never become entitled by the due process clause to a bond hearing. ECF No. 7 at 6–7. This Court does not read *Mezei* to establish such a proposition. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but [who was] stranded in his temporary haven on Ellis Island because other countries [would] not take him back." 345 U.S. at 207. In 1950, pursuant to emergency regulations, the Attorney General determined that, based on certain confidential information, the noncitizen should be excluded from the United States "for security reasons." *Id.* at 208-10, 214–15. The Supreme Court rejected the noncitizen's constitutional challenge, citing "considerations" of "danger to the national security":

> Thus we do not think that respondent's continued exclusion deprives him of any statutory or constitutional right. It is true that resident aliens temporarily detained pending expeditious consummation of deportation proceedings may be released on bond by the Attorney General whose discretion is subject to judicial review. By that procedure aliens uprooted from our midst may rejoin the community until the Government effects their leave. *An exclusion proceeding grounded on*

> *danger to the national security, however, presents different considerations*; neither the rationale nor the statutory authority for such release exists. *Ordinarily to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding* ….

*Id.* at 215-16 (citations omitted and emphasis added).

This Court agrees with those courts that distinguish the constitutional holding in *Mezei* as addressing the national security considerations presented in that case. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("*Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to the issue of whether prolonged detention without a bond hearing violates due process); *Rash v. LaRose*, No. 26-cv-8-LL-DEB, 2026 WL 249324, at *4 (S.D. Cal. Jan. 30, 2026) (same). Here, in contrast, neither the Attorney General nor any other government component has made a determination that Petitioner should be excluded on grounds of national security; Petitioner is not seeking to circumvent such a determination. Petitioner is instead seeking a bond hearing.

Respondents also cite *Barrera-Echavarria v. Rinson*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc), *superseded by statute as stated in Xi v. INS*, 298 F.3d 832, 837 (9th Cir. 2002). *Barrera-Echavarria* stated that *Mezei* "suggests that the Court found that excludable aliens simply enjoy no constitutional right to be paroled into the United States, even if the only alternative is prolonged detention." 44 F.3d at 1450. But the Ninth Circuit went on to say that the case before it did not involve indefinite detention; instead, the noncitizen in that case was subject to a set of regulations known as the Cuban Parole Plan, under which

26-cv-981-RSH-DDL

he had "the opportunity on an annual basis to show that since the previous review he has changed his behavior and would no longer constitute a danger to society if paroled." *Id.* This case, too, is inapposite here. Petitioner here has never received a consideration of whether he should be granted release on bond, and it appears that in Respondents' view, no length of detention would entitle him to such a review.

The Court concludes that it has authority to review whether Petitioner's detention, pursuant to a scheme of mandatory detention, has become unconstitutionally prolonged.

**B.     Whether Petitioner's Detention is Prolonged in Violation of Due Process**

In determining whether Petitioner's detention has become prolonged, the Court applies a six-factor balancing test used by some district courts. *See Kydyrali*, 499 F. Supp. 3d at 773–74; *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). That test considers: (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *See Kydyrali*, 499 F. Supp. 3d at 773–74.

Here, Petitioner has been detained for almost 15 months. Respondents argue that "[i]n general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." ECF No. 7 at 8 (quoting *Sibomana v. LaRose*, No. 22-cv-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023)). This proposition, applied to Petitioner's length of detention, favors a bond hearing. The fact that courts have granted habeas relief in some other cases involving *longer* periods of detention does not indicate that Petitioner is ineligible for such relief; still other courts have granted habeas relief in cases involving *shorter* periods of detention.[1]

---

[1]     *See, e.g.*, *Hoyos Amado v. U.S. Dep't of Justice*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months

As for the remaining factors to the extent addressed in the briefing, Respondents argue, "Petitioner is responsible for months of delay by failing to even request relief for almost six months from December [2024] until May 30, 2025." ECF No. 7 at 10. Looking at the present status of Petitioner's appeal before the BIA, however, the Court does not conclude that those proceedings are delayed, and does not ascribe to Petitioner blame for delay. Indeed, if Petitioner had timely filed a request for relief prior to May 30, 2025, his application would likely have taken more time to adjudicate than it has.

Respondents further argue that once the BIA rules on Petitioner's appeal, "his path to removal or release will become clearer." ECF No. 7 at 10. This statement is true as far as it goes, but given Petitioner's expressed intent to seek review from the U.S. Court of Appeals of any adverse decision from the BIA, ECF No. 1 at 7, absent a bond hearing Petitioner faces a likelihood of significant continued detention.

Petitioner also argues that his conditions of confinement at the Imperial Regional Detention Facility involve significant restrictions that are affecting specific physical issues requiring medical attention outside the confines of Petitioner's detention facility. *Id.* Respondents do not address these allegations.

On balance, the Court determines that Petitioner's detention without a bond hearing has become unreasonable and violates due process. Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify his continued detention by

---

without a bond hearing weighs toward a finding that it is unreasonable.") (collecting cases); *Tanoyan v. Andrews*, No. 25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period … qualifies as prolonged."); *Gao v. LaRose*, No. 25-cv-2084-RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) ("Petitioner has been in immigration detention … approximately one year. District courts have found shorter lengths of detention … without a bond hearing to be unreasonable.") (collecting cases).

26-cv-981-RSH-DDL

a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"); *see also Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)).

## IV.    CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Respondents are directed to arrange a bond hearing for petitioner Mahad Abdi Ahmed before an immigration court within ***seven (7) days of this order*** as described above.

No later than ***fourteen (14) days after the date of this order***, Respondents shall file a status report advising the Court of when Petitioner's bond hearing occurred, as well as the outcome of that hearing.

**IT IS SO ORDERED**.

Dated: March 9, 2026

_____
Hon. Robert S. Huie
United States District Judge